UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re                                                              Chapter 7

GARY TASHLITSKY
*aka* IGOR TASHLITSKY,                                            Case No. 12-45669-CEC

                              Debtor.
----------------------------------------------------------------x
YANKOWITZ LAW FIRM, P.C.,                                         Adv. Proc. No. 12-1304-CEC

                              Plaintiff,

                   -against-

GARY TASHLITSKY
*aka* IGOR TASHLITSKY,

                              Defendant.
----------------------------------------------------------------x

<u>DECISION</u>

APPEARANCES:

| | |
|---|---|
| Andrew S. Koenig, Esq. | Robert J. Spence, Esq. |
| The Yankowitz Law Firm, P.C. | Spence Law Office, P.C. |
| 175 East Shore Road | 500 N. Broadway – Ste. 200 |
| Great Neck, NY 11023 | Jericho, NY 11753 |
| *Attorney for Plaintiff* | *Attorney for Debtor/Defendant* |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of Gary Tashlitsky a/k/a Igor Tashlitsky (the "Debtor"), seeking to dismiss, in part, the complaint (the "Complaint") filed against him by Yankowitz Law Firm, P.C. ("Plaintiff" or "Yankowitz"), objecting to the dischargeability of a debt under § 523 of Title 11, U.S.C. (the "Bankruptcy Code").[1]  The Complaint alleges that the Debtor diverted potential clients from Yankowitz to other law practices while acting as Yankowitz's office manager, and that the debt is non-dischargeable under § 523(a)(4), which provides an exception to discharge for debts for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," and under § 523(a)(6), which provides an exception to discharge for debts for "willful and malicious injury by the debtor to another entity or to the property of another entity."  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as incorporated by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtor moves to dismiss the cause of action predicated on § 523(a)(4).  The Debtor asserts that he did not act in a "fiduciary capacity," and the diversion of potential clients does not constitute "embezzlement," as those terms are used in § 523(a)(4). For the reasons set forth below, the Debtor's motion is granted, and the claim predicated on § 523(a)(4) is dismissed, except to the extent set forth below.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996, as amended by order dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

---

[1] Unless otherwise indicated, all statutory citations are to provisions of Title 11, U.S.C.

## **BACKGROUND**

The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code

on August 2, 2012.  On Schedule F, which lists creditors holding unsecured non-priority claims,

the Debtor scheduled a debt to Yankowitz as contingent, unliquidated, and disputed.  On

November 7, 2012, Plaintiff timely filed a complaint seeking a determination that the debt owed

to Plaintiff is not dischargeable in bankruptcy pursuant to § 523(a)(4) and (6).[2]

The Complaint alleges the following pertinent facts:

From 2001 until November 26, 2008, the Debtor, a law school graduate who was never

licensed to practice law, was employed by the Plaintiff's personal injury law firm as its full time

office manager.  Compl. ¶¶ 12, 13, ECF No. 1 ("Compl.").  In this capacity, the Debtor was

responsible for taking basic information from potential clients who contacted the Plaintiff's

office.  Compl. ¶ 15.

At some point between 2006 and 2008, the Debtor began diverting potential clients from

Yankowitz to his own unauthorized law practice, or to one of two other law firms.  Compl.

¶¶ 16, 17.  The Debtor solicited the assistance of other Yankowitz employees in furtherance of

this scheme, and used "firm resources, including but not limited to Plaintiff's phone system,

computers, fax machines, photocopying resources, postage, federal express account, Department

of Motor Vehicle account, and supplies."  Compl. ¶ 19.

The Complaint alleges that Debtor "did not comply with his agreement with The

Yankowitz Law Firm that required him to give his full and undivided loyalty and efforts on the

firm's behalf, as a full time employee; and, instead, engaged in fraudulent and illegal efforts to

---

[2] The heading and opening paragraph of the Complaint purport to seek a determination of non-dischargeability under § 523(a)(2) as well, and to object to the Debtor's discharge under provisions of § 727.  However, only two counts, under § 523(a)(4) and (6), are alleged in the body of the Complaint.

benefit himself to the detriment of The Yankowitz Law Firm and assisted aforesaid attorneys…,

during business hours and while being compensated by The Yankowitz Law Firm." Compl.

¶ 21.  The Complaint further alleges that "[t]he defendant/debtor Tashlitsky, as an employee of

The Yankowitz Law Firm, PC owed the firm a duty of loyalty and good faith and he breached

his fiduciary duty by engaging in a secretive, fraudulent scheme to unlawfully solicit and divert

potential clients of the firm to himself and/or other attorneys." Compl. ¶ 25.

   The Plaintiff commenced an action in state court against the Debtor and the other law

firms on March 19, 2009, asserting causes of action for tortious interference, fraud, breach of

fiduciary duty, and unjust enrichment. Compl. Ex. B.  This litigation is currently pending, though

stayed as to the Debtor.

   Based on these allegations, Yankowitz seeks a determination that the Debtor's liability

to Yankowitz is non-dischargeable.  Yankowitz claims that the debt is non-dischargeable under

§ 523(a)(4) because the debt is for "fraud or defalcation while acting in a fiduciary capacity,"

and for "embezzlement."  Yankowitz also asserts that the debt is non-dischargeable under

§ 523(a)(6) because the debt is for "willful and malicious injury" to Yankowitz.

   On December 14, 2012, the Debtor filed a motion to dismiss the claim predicated on

§ 523(a)(4).  The Debtor argues that even if all allegations in the Complaint are true, Debtor, as

office manager of a law firm, was not a fiduciary within the meaning of § 523(a)(4); that the

diversion of potential clients does not constitute the taking of "property" as required to establish

embezzlement; and that the Complaint does not adequately plead the elements of fraud as

required under Rule 9 of the Federal Rules of Civil Procedure.

**DISCUSSION**

A.  Standard for a Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rues of Civil Procedure, made applicable in

bankruptcy cases by Bankruptcy Rule 7012(b), a complaint may be dismissed for "failure to state

a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). While "'a court must accept as true all

[factual] allegations contained in a complaint,' [it] need not accept 'legal conclusions.'" Wells

Fargo Bank, Nat. Ass'n v. Kokolis, No. 12–cv–2433 (DLI)(JO), 2013 WL 789448 at *2

(E.D.N.Y. 2013) (citing Iqbal, 556 U.S. at 678).

B.  Section 523(a)(4)

The goal of the Bankruptcy Code is to provide a fresh start to the "honest but

unfortunate" debtor. Cohen v. de la Cruz, 523 U.S. 213, 217 (1998). Thus, while debts owed at

the time of the debtor's bankruptcy filing are generally discharged, the Bankruptcy Code

provides "certain categories of nondischargeable debts that Congress has deemed should survive

bankruptcy." Giamo v. DeTrano (In re DeTrano), 326 F.3d 319, 322 (2d Cir. 2003). Section

523(a)(4) provides one such exception for a debt arising from "fraud or defalcation while acting

in a fiduciary capacity, embezzlement, or larceny."

Because failure to obtain a discharge can often result in a debtor's "financial death

sentence…exceptions to discharge are to be narrowly construed and genuine doubts should be

resolved in favor of the debtor." Denton v. Hyman (In re Hyman), 502 F.3d 61, 66 (2d Cir.

2007).  Moreover, "exceptions to discharge 'should be confined to those plainly expressed.'"

Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998) (quoting Gleason v. Thaw, 236 U.S. 558, 562

(1915)).


   C.  Fiduciary Capacity

       Defendant first contends that as Yankowitz's office manager, he did not stand in a

"fiduciary capacity" to Yankowitz as that term is used in § 523(a)(4).

       The term "fiduciary," for the purpose of § 523(a)(4), is not defined in the Bankruptcy

Code.  See Andy Warhol Found. v. Hayes (In re Hayes), 183 F.3d 162, 167 (2d Cir. 1999).

Instead, courts look to federal law to determine its meaning.  See Grow Up Japan, Inc. v.

Yoshida (In re Yoshida), 435 B.R. 102, 109 (Bankr. E.D.N.Y. 2010); E. Armata, Inc. v. Parra (In

re Parra), 412 B.R. 99, 104 (Bankr. E.D.N.Y. 2009); Chao v. Duncan (In re Duncan), 331 B.R.

70, 80 (Bankr. E.D.N.Y. 2005).  "[T]he broad, general definition of fiduciary, involving

confidence, trust, and good faith, is not applicable in dischargeability proceedings under

§ 523(a)(4)."  Duncan, 331 B.R. at 80 (citing Zohlman v. Zoldan, 226 B.R. 767, 772 (S.D.N.Y.

1998)).  Rather, a fiduciary relationship under § 523(a)(4) "generally involv[es] express trusts,

technical trusts or statutorily imposed trusts."  Yoshida, 435 B.R. at 108.  State law is relevant to

the extent that it prescribes the elements of a trust or regulates fiduciary obligations.  See Hayes,

183 F.3d at 167 ("As a general matter…federal law sets the outer boundaries of the defalcation

exception, while state law may, through lesser or greater regulation of fiduciary obligations,

affect the application of the provision"); see also Zohlman, 226 B.R. at 773 (quoting Ragsdale v.

Haller, 780 F.2d 794, 796 (9th Cir. 1986)) ("Although the concept of fiduciary is to be narrowly

defined as a matter of federal law, state law is to be consulted to determine when a trust in this

strict sense exists"); In re Marchiando, 13 F.3d 1111, 1116 (7th Cir. 1994) (Posner, CJ) ("If a

fiduciary is anyone whom a state calls a fiduciary states will have it in their power to deny a

fresh start to their debtors by declaring all contractual relations fiduciary").

Moreover, "the fiduciary relationship must exist prior to the act creating the debt; a trust

relationship cannot be said to arise merely from the wrongful conduct itself." Zohlman, 226

B.R. at 773. Thus, a fiduciary relationship under § 523(a)(4) does not arise based upon an

equitable trust, such as a constructive trust. See Yoshida, 435 B.R. at 108 ("[T]he fiduciary

concept incorporated in § 523(a)(4) and its predecessor statutes…does not extend to resultant

trusts imposed by operation of law or equity"); Duncan, 331 B.R. at 77 ("Section 523(a)(4)

applies only to express or technical trusts, not to constructive trusts, implied trusts, or trusts

implied on the basis of wrongful conduct"); Air Traffic Conference of Am. v. Paley (In re

Paley), 8 B.R. 466, 469 (Bankr. E.D.N.Y. 1981) ("If a trust or fiduciary relationship existed…as

a result of the wrongdoing…the defendants did not act in a fiduciary capacity within the meaning

of…section 523(a)(4)").

Although a fiduciary relationship under § 523(a)(4) is usually limited to the trust

relationships noted above, other relationships may, in limited circumstances, also be within the

scope of § 523(a)(4). See Hayes, 183 F.3d at 169 ("[C]ertain relationships not constituting actual

trusts are within the defalcation exception"); Artis v. West (In re West), 339 B.R. 557, 566

(Bankr. E.D.N.Y. 2006) ("[T]he fiduciary connection arising from a technical or express trust

does not exhaust the universe of fiduciary relationships that fall within the ambit of

§ 523(a)(4)"). Drawing from earlier statutory formulations of the defalcation exception, the

Second Circuit has stated that relationships that fall within the defalcation exception in the

absence of a trust are characterized by "a difference in knowledge or power between the

- 6 -

fiduciary and principal which gives the former a position of ascendancy over the latter," and

applies where the fiduciary nature of the relationship has been well-established under state law.

Hayes, 183 F.3d at 167; see also West, 339 B.R. at 567 ("[W]here an agent's obligations to a

principal are heightened by state statutory or common law and the agent is in a position of power

over the principal, a fiduciary relationship within the meaning of § 523(a)(4) arises"); Zohlman,

226 B.R. at 774 (finding that a fiduciary relationship under § 523(a)(4) may be found, in the

absence of a pre-existing trust relationship, "if state common law has raised the duties…so as to

create an express or technical trust by common law").

Thus, even in the absence of an express trust, the attorney-client relationship constitutes a

fiduciary relationship under § 523(a)(4).  See Hayes, 183 F.3d at 168, 170 ("[T]he attorney client

relationship, although usually not involving a technical trustee or express trust has long been

understood to be within the meaning of the defalcation exception…. [T]he attorney-client

relationship, without more, constitutes a fiduciary relationship within the meaning of Section

523(a)(4)"); see also West, 339 B.R. at 567-68 (finding that an attorney-in-fact is a fiduciary

within the meaning of § 523(a)(4), noting the clearly defined legal obligations under New York

law and the "wide gap in knowledge and power" between debtor and the plaintiffs in that case).

Similarly, a director or officer of a corporation may act in a fiduciary capacity towards the

corporation, see Hayes, 183 F.3d at 168 ("[N]umerous cases have applied the defalcation

exception to debts owed by corporate officers, notwithstanding the absence of any express

trust"); West, 339 B.R. at 567 (citing In re Bernard, 87 F.2d 705, 706 (2d Cir. 1937))

("[C]orporate officers are deemed to be acting in a fiduciary capacity to the corporation"); and a

partner may stand in a fiduciary relationship to other partners in a partnership, see Zohlman, 226

B.R. at 767 (holding that New York's longstanding emphasis on the elevated fiduciary duties

between partners creates a fiduciary relationship within the meaning of § 523(a)(4)).

Conversely, no fiduciary relationship arises solely from an agency or employer-employee relationship.  See West, 339 B.R. at 567 ("[A]n agency relationship does not necessarily bring into existence a fiduciary relationship under § 523(a)(4)"); Paley, 8 B.R. at 469 ("The existence of a principal-agent relationship between the parties…does not create a fiduciary relationship"); Wachtel v. Rich (In re Rich), 353 B.R. 796, 806 (Bankr. S.D.N.Y. 2006) ("[N]ot all agency relationships will rise to a fiduciary level for purposes of § 523(a)(4)); In re Schulman, 196 B.R. 688, 698 (Bankr. S.D.N.Y. 1996) (employer-employee relationship does not establish a fiduciary duty under § 523(a)(4)).  Moreover, it is "the character of the debt relationship and not its form that determines whether a fiduciary 'trust' relationship exists," and the use of the word "trust" is not determinative.  Paley, 8 B.R. at 469.

Here, the allegations relating to the Debtor's pre-existing relationship with Yankowitz are that the Debtor was a full time office manager of the Plaintiff's law firm who was responsible for taking basic information from potential clients, Compl. ¶¶ 12, 13, 15; that the Debtor's agreement with Yankowitz "required him to give his full and undivided loyalty and efforts on the firm's behalf, as a full time employee," Compl. ¶ 21; and that as its employee, the Debtor "owed the firm a duty of loyalty and good faith."  Compl. ¶ 25.  These allegations, taken as true, do not support a finding that the Debtor stood in a fiduciary relationship to Yankowitz under § 523(a)(4).

While the Debtor's position as a "full time office manager" or as a "full time employee," responsible for handling client intake, may have imposed certain obligations on him, the position does not constitute a fiduciary capacity under § 523(a)(4).  The allegations do not support the existence of an express, technical, or statutory trust, or a finding that the Debtor occupied a

"position of ascendancy" over Yankowitz to warrant consideration of whether a fiduciary

relationship exists absent a trust.  See Hayes, 183 F.3d at 167.  As the court noted in Yoshida, in

considering whether an office manager, unlike an employee or agent, may be a fiduciary under

§ 523(a)(4), "the elevation of an employee to a managerial position [does not] bring into being a

fiduciary relationship within the purview of § 523(a)(4)."  Yoshida, 435 B.R. at 109–110; see

also Lacourse Builders LLC v. D'Anello (In re D'Anello), 477 B.R. 13, 26 (Bankr. D. Mass.

2012) (manager of construction company, while subject to fiduciary duties of loyalty and care,

did not hold a position of "substantial ascendancy" over the company and is thus not a fiduciary

for purposes of § 523(a)(4)); Novartis Corp. v. Luppino (In re Luppino), 221 B.R. 693, 698–99

(Bankr. S.D.N.Y. 1998) (management level employee not a fiduciary under § 523(a)(4));

Colonial–Interstate, Inc. v. Ayers (In re Ayers), 83 B.R. 83, 88 (Bankr.M.D.Ga.1988) (service

station manager responsible for handling and depositing cash receipts not a fiduciary under

§ 523(a)(4)); DL & B Oil Co. v. Dawson (In re Dawson), 16 B.R. 343 (Bankr. N.D. Ill. 1982)

(gas service station operator was a "trusted agent" of the owner, but not a fiduciary under

§ 523(a)(4)).

    Nor can Plaintiff establish a fiduciary relationship based on an agreement that "required

him to give his full and undivided loyalty and efforts on the firm's behalf, as a full time

employee."  As noted above, a relationship is not considered fiduciary in nature under

§ 523(a)(4) merely because it involves "confidence, trust, and good faith."  See Duncan, 331

B.R. at 80.  Absent the characteristics of a formal trust relationship, or a situation where the

debtor holds a "position of ascendancy," Hayes, 183 F.3d at 167, courts have declined to find a

fiduciary relationship under § 523(a)(4) even when a written agreement purports to create a trust

relationship.  See, e.g., Paley, 8 B.R. 466 (travel agency not a fiduciary to airlines for purposes of

determining dischargeability of debt arising from failure to turn over proceeds from the sale of

airline tickets, notwithstanding provisions in a written agreement that the funds are to be

"property of the carrier" and "held in trust" by the agency, absent any obligation to segregate the

funds); Ayers,  83 B.R. at 87 (fiduciary relationship not established under § 523(a)(4)

notwithstanding written agreement that property and receipts are "entrusted" to the defendant,

and that he has "no ownership interest in them").  Here, where the alleged agreement does not

purport to create a trust relationship, it certainly does not satisfy the heightened requirements of

§ 523(a)(4).  For these reasons, the claim seeking a determination of nondischargeability based

on "fraud or defalcation while acting in a fiduciary capacity" must be dismissed.


   D.  Embezzlement

      Defendant contends that the allegation that the Debtor diverted potential clients from

Yankowitz does not state a claim for nondischargeability of a debt arising from "embezzlement"

under § 523(a)(4).

      Federal common law provides the elements of "embezzlement" for purposes of

§ 523(a)(4).  See Central Islip Plumbing Supply v. Dooley, No. 10-CV-1627 (JFB), 2011 WL

1261136 at *7 (E.D.N.Y. Mar. 30, 2011); Great Am. Ins. Co. v. Graziano (In re Graziano), 35

B.R. 589, 594 (Bankr. E.D.N.Y. 1983).  Defined as the "fraudulent appropriation of property by

a person to whom such property has been entrusted or into whose hands it has lawfully come,"

see Graziano, 35 B.R. at 595 (citing Moore v. United States, 160 U.S. 268, 269 (1895)),

embezzlement may be broken down into five elements: "(1) entrustment to the debtor of (2)

property (3) of another (4) which the debtor appropriates for his or her own use (5) with intent to

defraud."  Race Place of Danbury, Inc. v. Scheller (In re Scheller), 265 B.R. 39, 53 (Bankr.

S.D.N.Y. 2001).  The Debtor contends that Yankowitz's interest in the potential clients that he

allegedly diverted is an interest or expectancy in a business opportunity, which is not "property"

that may be embezzled.

In the absence of controlling federal law, courts have generally looked to the definition of

"property" under state law when construing § 523(a).  See One-On-One Fitness Pers. Training

Serv., Inc. v. Reyes (In re Reyes), Adv. No. 09 A 1277, 2010 WL 2757180 at *3 (Bankr. N.D.

Ill. 2010) ("'[P]roperty' for purposes of § 523(a) is determined by state law rather than federal

law"); Hellenic Enter., Inc. v. Vitogiannis (In re Vitogiannis), Adv. No. 08 A 00315, 2009 WL

1372065 at *11 (Bankr. N.D. Ill. 2009) (considering Illinois conversion law to determine

whether a corporate opportunity is "property" under § 523(a)(2)(A) and (4)); Weidle Corp. v.

Leist (In re Leist), 398 B.R. 595, 602 (Bankr. S.D. Ohio 2008) ("[W]hile a court looks to federal

bankruptcy law to determine whether an exception to discharge under § 523(a) has been met, the

court must look to applicable substantive federal and state law to determine the existence and

nature of interests in property"); see also Butner v. United States, 440 U.S. 48, 54–55 (1979) (in

bankruptcy, "[p]roperty interests are created and defined by state law").  Applying applicable

state law, courts have generally determined that a corporate opportunity does not constitute

"property" for purposes of § 523(a) exceptions.  See Reyes, 2010 WL 2757180 at *4 (client

relationships are not "property" under Illinois conversion law); Leist, 398 B.R. at 602–03

(business opportunities are not "property" under Ohio conversion law); Vitogiannis, 2009 WL

1372065 at *13 (corporate opportunities are not "property" under Illinois conversion law).

In Digital Commerce Ltd. v. Sullivan (In re Sullivan), however, the bankruptcy court

reached a different conclusion.  Digital Commerce Ltd. v. Sullivan (In re Sullivan), 305 B.R.

809, 825–26 (Bankr. W.D. Mich. 2004).  The court in that case relied upon a comment to the

Restatement (Second) of Torts, stating that,

> [i]t is at present the prevailing view that there can be no conversion
> of an ordinary debt not represented by a document, or of such
> intangible rights as the goodwill of a business or the names of
> customers. The process of extension has not, however, necessarily
> terminated; and nothing that is said in this Section is intended to
> indicate that in a proper case liability for intentional interference
> with some other kind of intangible rights may not be found.

The court then stated that

> [i]n a nondischargeability context relating to embezzlement under
> § 523(a)(4), there is no cogent reason to exclude intangible
> property from the coverage of the statute. A creditor, in this
> instance an employer, can be cheated or deprived of intangible
> property just as easily as tangible personal property or money. In
> this modern society, with its great reliance upon intellectual
> property and commercial ideas, theft of intangible property is
> always possible. Although the undersigned judge believes that any
> expansion of the meaning of "property" to include intangibles in
> the embezzlement context may be subject to some criticism, the
> facts in this case warrant a conclusion that the Debtor appropriated
> to his own use property (a concrete corporate opportunity) that was
> entrusted to him (in his capacity as President) in a fraudulent
> (secretive and unwarranted) manner

Sullivan, 305 B.R. at 826–827.  Thus, the court in Sullivan determined that under the facts of the

case before it, the definition of property should be extended to include intangibles not previously

recognized as subject to conversion, for purposes of applying the embezzlement exception under

§ 523(A)(4).  Because New York law has clearly defined the limits of a cause of action for

conversion as applied to intangible property, the definition of "property" for the purposes of

§ 523(A)(4) cannot be similarly extended in this case.

Historically, New York has recognized the general principle that "the subject matter of a

conversion action must constitute identifiable tangible personal property.  Thus, whether the

property claimed to have been converted is real property…or an interest or expectancy in a

business opportunity… conversion will not lie."  Roemer and Featherstonhaugh P.C. v.

Featherstonhaugh, 267 A.D.2d 697 (3rd Dept. 1999) (citation omitted).  In certain circumstances, however, intangible property may also subject to conversion in New York.

The extent to which intangible property may be considered "property" subject to conversion was recently clarified by the New York Court of Appeals in Thyroff v. Nationwide Mutual Insurance Company, answering a certified question from the Second Circuit, which asked whether electronic data may be converted under New York law.  Thyroff v. Nationwide Mut. Ins. Co., 8 N.Y.3d 283 (2007).  While noting that early formulations of the tort of conversion required interference with "goods" or "chattels," the Court of Appeals recognized that conversion law "has gone through a great deal of evolution over time," and that "courts became willing to consider new species of personal property eligible for conversion actions."  Id. at 286–289.  The court noted that under the well-established "merger" doctrine, intangible property rights, like shares of stock in a company, can be united with a tangible object that represents those intangible rights, like a stock certificate, for conversion purposes.  Id. at 289. Turning to the issue of whether electronic data, which does not strictly satisfy the merger doctrine, constitutes property for conversion purposes, the court noted the similarities between physical documents and electronic data as currently used, and determined that New York common law of conversion should be expanded to include such data, even if it is not embodied in a paper document.[3]  Id. at 291–93.

It is clear that intangible property subject to conversion law in New York is limited to items that bear a substantial similarity to tangible property, like electronically stored data and

---

[3] The court stated that "[w]e cannot conceive of any reason in law or logic why this process of virtual creation should be treated any differently from production by pen on paper or quill on parchment. A document stored on a computer hard drive has the same value as a paper document kept in a file cabinet…. it generally is not the physical nature of a document that determines its worth, it is the information memorialized in the document that has intrinsic value. A manuscript of a novel has the same value whether it is saved in a computer's memory or printed on paper." Id. at 291–92.

other information, and that Thyroff does not affect the rule that expectancies alone do not

suffice.  Cases decided by courts applying New York law after Thyroff have adhered to the view

that business opportunities cannot be converted.  See Nelly de Vuyst, USA, Inc. v. Europe

Cosmetiques Inc., No. 11 CV 1491(VB), 2012 WL 246673 at *8 (S.D.N.Y. 2012) ("A right to

the benefits under a contract is not the type of intangible property interest which Thyroff

contemplated… These are not property interests protected by the law of conversion."); ARB

Upstate Commc'ns LLC v. R.J. Reuter, LLC., 93 A.D.3d 929, 931–932 (3d Dept. 2012) (citing

Roemer and Thyroff for the proposition that "[t]he subject matter of a conversion action must

constitute identifiable tangible personal property; real property and interests in business

opportunities will not suffice"); Sun Gold Corp. v. Stillman, 95 A.D.3d 668, 669–670 (1st Dept.

2012) (decided post-Thyroff, and holding that "[d]ismissal of plaintiff's causes of action for

conversion of its leasehold and future business interests was…appropriate. The conversion of

intangible property is not actionable").

The Plaintiff's reliance on Alexander & Alexander of New York v. Fritzen, 147 A.D.2d

241 (1st Dept. 1989) is misplaced.  The Plaintiff cites that court's statement that "[t]he doctrine

of 'corporate opportunity' provides that corporate fiduciaries and employees cannot, without

consent, divert and exploit for their own benefit any opportunity that should be deemed an asset

of the corporation," for the proposition that a corporate opportunity is deemed an "asset" of the

corporation. Id. at 246.  Whether a corporate opportunity is an asset of the company for purposes

of the corporate opportunity doctrine has no bearing on whether a corporate opportunity

constitutes "property" under the separate cause of action for conversion in New York, so as to be

considered property that may be the subject of "embezzlement" under § 523(A)(4).

For these reasons, the claim seeking a determination of nondischargeability under

§ 523(a)(4) based upon the Debtor's diversion of potential clients of Yankowitz must also be

dismissed.[4]

Because the claims under § 523(A)(4) are dismissed based upon failure to state a claim, it

is unnecessary to address whether this claim satisfies the requirements of Rule 9 of the Federal

Rules of Civil Procedure.

---

[4] The Debtor's motion to dismiss the embezzlement prong of the complaint seeks to dismiss the claims based on allegations that the Debtor diverted potential clients, but does not address the allegations that the Debtor utilized "firm resources, including but not limited to Plaintiff's phone system, computers, fax machines, photocopying resources, postage, federal express account, Department of Motor Vehicle account, and supplies." Although the Debtor asserts in his reply that these are de minimis, the complaint, on its face, provides sufficient facts, taken as true and construed in a light most favorable to Plaintiff, to support a cause of action for embezzlement of firm resources. Thus, the § 523(a)(4) claim survives only to the extent of the value of "firm resources," to the extent the elements of embezzlement exist as to that property.

## CONCLUSION

For the reasons set forth above, the Defendant's motion to dismiss is granted, and the

claim seeking a determination of nondischargeability under § 523(a)(4) is dismissed, except to

the extent that it alleges embezzlement of the Plaintiff's "firm resources."  A separate order will

issue.



**Dated: Brooklyn, New York**
**June 24, 2013**

**Carla E. Craig**
**United States Bankruptcy Judge**